Below is an opinion of the court.

_____
PETER C. McKITTRICK
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>GLORIA MAE NELSON and<br>LARRY HOWARD NELSON,<br><br>　　　　　　Debtors. | Bankruptcy Case<br>No. 23-30994-pcm13<br><br><br>Adv. Proc. No. 23-3065-pcm |
| UNITED STATES TRUSTEE,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>KEITH H. BRAY and<br>THE REZIDENTIAL GROUP, INC.,<br><br>　　　　　　Defendants. | MEMORANDUM DECISION[1] |

The United States Trustee (the "UST") initiated this adversary proceeding against Keith

Bray ("Bray") and the Rezidential Group, Inc. ("Rezidential Group") (collectively the

---

[1] This disposition is specific to this case and is not intended for publication or to have a controlling effect on other cases. It may, however, be cited for whatever persuasive value it may have.

Page 1 – MEMORANDUM DECISION

"Defendants") under 11 U.S.C. § 110.[2] The Defendants are bankruptcy petition preparers ("BPPs") as defined in § 110(a). The UST requests the court assess fines against the Defendants under § 110(l) for violations of § 110, award damages under § 110(i), and order the forfeiture of fees under § 110(h). The UST also seeks to permanently enjoin the Defendants from acting as BPPs in the District of Oregon. Having been properly served, the Defendants did not file an answer or otherwise appear. The UST and Bray exchanged emails regarding upcoming deadlines and hearing dates in connection with this adversary proceeding. The UST relayed to the court Bray's request for an extension of time to file a response and emailed Bray a copy of the notice of hearing and the continued pre-trial conference. After confirming receipt of the documents, Bray did not communicate further with the UST. The UST moved for a default order against the Defendants, which the court entered on November 13, 2023.[3]

The court has jurisdiction of this case under 28 U.S.C. § 1334 and authority to hear and determine this matter as a core proceeding under 28 U.S.C. § 157(b)(2). On February 15, 2024, the court held an evidentiary hearing on the questions of damages and injunctive relief. The Defendants did not appear. For the reasons stated below, the court will enter a judgment in favor of the UST and issue a permanent injunction against the Defendants.

## BACKGROUND

After a series of unfortunate events, Gloria and Larry Nelson (the "Debtors") found themselves in difficult financial circumstances. Facing foreclosure, the Debtors were contacted by a group called Cardinal Branch, who represented they could help the Debtors save their home.

---

[2] Unless otherwise noted, all references to chapters and sections are to the Bankruptcy Code, 11 U.S.C. § 101, et. seq.

[3] ECF No. 13.

The Debtors reviewed Cardinal Branch's website and, satisfied that it was a legitimate business, paid Cardinal Branch $2,000 on April 1, 2023, and another $2,000 on April 27th.[4] After some time, a representative of Cardinal Branch informed the Debtors they were referring them to the Defendants, who would assist the Debtors through bankruptcy. As they did with Cardinal Branch, the Debtors reviewed the Rezidential Group website. In referring the Debtors, the representative told the Debtors they transferred no less than $2,000 of the funds the Debtors paid to Cardinal Branch to the Defendants.

When the Debtors connected with Bray, he walked them through the bankruptcy process and explained how bankruptcy could alleviate their financial troubles by eliminating their debts. Bray was the only member of the Rezidential Group the Debtors communicated with. Given his expertise, breadth of knowledge, and use of terms such as "associates" and "partners," the Debtors were under the impression that Bray was a licensed attorney in California. Based on his representations and demeanor, when Bray assured them that they could save their home through bankruptcy and that everything would be okay, the Debtors believed him.

At Bray's recommendation, the Debtors moved forward with filing a chapter 13 case and entered into a written contract with the Defendants. The Defendants prepared and emailed a completed copy of the bankruptcy petition to the Debtors. The Debtors then printed, signed, and filed the petition with the court on May 4, 2023.[5] Based on information provided by the Debtors, the Defendants also prepared and emailed the Debtors' Schedules, Statement of Financial Affairs, and other documents, including a motion to extend the deadline to file documents.[6]

---

[4] Ex. B.

[5] Ex. N.

[6] Ex. O & P.

After printing the documents and making certain handwritten changes, the Debtors signed and filed them with the court. The Debtors paid Bray an additional $1,995 for his services in connection with the bankruptcy filing.[7] The Debtors testified Bray provided them with a completed chapter 13 plan and instructed them to copy the information by hand onto a blank plan before filing it with the court. Bray explained this process was necessary because he was not licensed to practice law in Oregon. The chapter 13 trustee also received a copy of the Debtors' plan from an email address appearing to belong to Mike Chappars ("Chappars") a California attorney. The signature line indicated Chappars was a staff attorney with the Rezidential Group.[8] The chapter 13 trustee received several emails containing information and documents relating to the Debtors' case from this email address.[9]

Unbeknownst to the Debtors, Bray was not a licensed attorney. Although he had been licensed in California, he was disbarred in 2015.[10] After receiving the chapter 13 plan from the Chappars email, the chapter 13 trustee alerted the UST. The UST then contacted Chappars via the phone number listed on the California Bar Association directory. Despite his name appearing in the email address and signature line, Chappars said he had no connection with the Defendants or the Debtors.[11] The UST then emailed the Chappars email, requesting the user contact the UST office. In June 2023, the UST received a response stating, among other things, that the Chappars email was being used as an alias because the author "was a little scared to

---

[7]  Ex. B.

[8]  Ex. C.

[9]  Ex. C.

[10] Ex. G.

[11] Ex. E.

contact the trustee directly for obvious reasons."[12] The court concludes that Bray was the author of these emails. In his emails with the Debtors, Bray stated "I sent the Trustee proof of your enrollment in the HAF program, and I also sent the Chapter 13 Plan."[13]

The UST has since learned of several other cases filed with the assistance of the Defendants, including one in which there is a pending adversary proceeding against the Defendants alleging violations of § 110.[14]

## ANALYSIS

The Defendants are BPPs under § 110(a)(1), which defines a BPP as "a person, other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney, who prepares for compensation a document for filing." The services provided by BPPs are "strictly limited to typing bankruptcy forms."[15] "Perceiving a need to curtail widespread fraud, abuse and the unauthorized practice of law, Congress enacted legislation in 1994 seeking to restrict the activities of non-attorney BPPs."[16] "Section 110 was designed to prevent BPPs from taking 'unfair advantage of persons who are ignorant of their rights both inside and outside the bankruptcy system.'"[17] BPPs who violate the requirements and restrictions imposed by § 110 may face sanctions for their noncompliance.

---

[12] Ex. I.

[13] Ex. A.

[14] Ex. D.

[15] In re Reynoso, 477 F.3d 1117, 1125 (9th Cir. 2007).

[16] In re Wojcik, 560 B.R. 763, 769 (9th Cir. BAP 2016) (citing In re Crawford, 194 F.3d 954, 957 (9th Cir. 1999)).

[17] Id. at 769-70 (quoting In re Agyekum, 225 B.R. 695, 701 n.7 (9th Cir. BAP 1998)).

**1. The Defendants' Noncompliance with § 110**

Paragraphs (b)(1) and (c)(1)-(2) of § 110 require a BPP to sign, print their name and address, and include their social security number on each document for filing prepared by the BPP. A "'document for filing' means a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under this title."[18] Defendants violated each provision four times by failing to include the required information on the petition, the schedules, the motion to extend, and the chapter 13 plan.[19]

Prior to accepting any fees or preparing a document for filing, § 110(b)(2)(A) requires a BPP to provide debtors with a written notice on Official Form 119, as prescribed by the Judicial Conference of the United States. Subparagraph (b)(2)(B) requires a BPP to file a completed and duly signed copy of the Official Form 119 with each document for filing. The Defendants did not comply with the requirements of subparagraph (A) or (B).

Subsection (f) prohibits a BPP from using "legal" or "any similar term" in advertisements. The Rezidential Group website accessed by the Debtors advertised "litigation services" and "other legal services." It also purported to outline options available to those facing foreclosure, including that "a homeowner can file a complaint to enjoin a trustee sale or they can consider a Chapter 13 bankruptcy."[20] Therefore, the Defendants violated § 110(f).

---

[18] § 110(a)(2).

[19] See In re Rausch, 197 B.R. 109, 120 (Bankr. D. Nev. 1996) (finding the petition, schedules, and statement of financial affairs were each a separate "document for filing" for purposes of § 110(b)-(c)), aff'd sub nom. In re Crawford, 194 F.3d 954 (9th Cir. 1999). See also In re Brown, No. BK-S-14-12905, 2014 WL 3962821, at *2, 2014 Bankr. LEXIS 3447, at *5 (Bankr. D. Nev. Aug. 13, 2014) (preparing a motion meets the definition of a BPP under § 110).

[20] Ex. L.

Page 6 – MEMORANDUM DECISION

Case 23-03065-pcm    Doc 29    Filed 03/29/24

Paragraph (2) of subsection (h) requires a BPP to file a declaration under penalty of perjury, "together with the petition, disclosing any fee received from or on behalf of the debtor within 12 months immediately prior to the filing of the case, and any unpaid fee charged to the debtor." The Defendants did not disclose the compensation received and, therefore, did not comply with the requirements of this provision.

Under § 110(e)(2)(A), a BPP "may not offer a potential bankruptcy debtor any legal advice, including any legal advice described in subparagraph (B)."[21] The Debtors testified to multiple instances in which Bray gave prepetition legal advice. Bray counseled the Debtors on whether to file for bankruptcy and under what chapter. Bray apprised the Debtors of bankruptcy process and procedures. Bray informed the Debtors they could save their house and eliminate their debts through bankruptcy. Bray also counseled the Debtors on applying for assistance through the Homeowners Assistance Funds program and how they could use this program, in conjunction with bankruptcy, to eliminate their debts. The UST also points to several emails Bray sent to the Debtors between May 29 and July 27.[22] Although these exchanges may qualify as the unauthorized practice of law, subparagraph (A) specifies that a violation occurs when the legal advice is given to *potential* debtors. Because the Debtors were debtors in bankruptcy, not potential debtors, at the time of these emails, they are not violations of § 110(e).

As outlined above, the court finds the Defendants violated subsections (b), (c), (e), (f), and (h) of § 110.

**2. Monetary Sanctions for Violations of § 110**

---

[21] Subparagraph (B) provides a non-exhaustive list of advice BPPs are prohibited from offering.

[22] Ex. A.

(a) *Section 110(l)*

The UST asks the court to assess fines against the Defendants under subsection (l). Section 110(l) provides, in part,

> (1) A bankruptcy petition preparer who fails to comply with any provision of subsection (b), (c), (d), (e), (f), (g), or (h) may be fined not more than $500 for each such failure.
>
> (2) The court shall triple the amount of a fine assessed under paragraph (1) in any case in which the court finds that a bankruptcy petition preparer—
>
>> (A) advised the debtor to exclude assets or income that should have been included on applicable schedules;
>>
>> (B) advised the debtor to use a false Social Security account number;
>>
>> (C) failed to inform the debtor that the debtor was filing for relief under this title; or
>>
>> (D) prepared a document for filing in a manner that failed to disclose the identity of the bankruptcy petition preparer.

Courts are permitted, but not required, to assess fines against a BPP under (l)(1).[23] However, if one of the four conditions in (l)(2) is satisfied, the Code mandates the court treble any fines assessed under (l)(1).

The UST asks the court to impose the maximum fine for each violation. Courts across circuits have considered various factors in determining what fines to assess, if any, under (l)(1).[24] In the present case, the court finds the Defendants acted intentionally and egregiously in

---

[23] Id. at 771.

[24] See In re U.S. Trustee, 652 B.R. 731, 749 (Bankr. S.D. Tex. 2023) (recklessly guiding debtors into bankruptcy and not disclosing involvement in case warranted maximum fine); In re Abel, No. 19-10010, 2019 WL 5617932, at *8 (Bankr. D. Vt. Sept. 27, 2019) (failing to disclose identity and, in some cases, instructing debtors to hide BPP involvement, warranted maximum fine); In re Semchenko, No. 11-44878-E-7, 2013 WL 5913903, at *14 (Bankr. E.D. Cal. Oct. 22, 2013) (exhibiting indifference to obligations and lack of substantive response warranted maximum fine).

Page 8 – MEMORANDUM DECISION

concealing their identities and involvement in the case and, therefore, the maximum fine of $500 per violation is appropriate. For example, the Debtors testified the Defendants prepared the typed portions of the documents filed with the court. Page nine of the voluntary petition prompts unrepresented debtors to disclose whether they paid or agreed to pay a non-attorney to help fill out the forms. In the Debtors' petition, the response to this question was typed.[25] In other words, it was the Defendants who selected "No." Bray's impersonation of Chappars and admitted use of an alias in communications with the chapter 13 trustee further demonstrates the egregious lengths to which the Defendants went to hide their identities and involvement. Therefore, the court will assess $500 per violation pursuant to § 110(l)(1).

Because the Defendants failed to disclose their identity as BPPs in the documents filed with the court, the court will triple the fines pursuant to § 110(l)(2)(D). Therefore, the court assesses $22,500 in fines against the Defendants, payable to the UST for deposit in the United States Trustee Fund. This amount reflects the trebled $500 fine for four violations of (b)(1), four violations of (c)(1)-(2), two violations of (b)(2), one violation of subsection (f), one violation of (h)(2), and three violations of (e)(2).

(b) *Section 110(i)*

On the Debtors' behalf, Cardinal Branch transferred $2,000 of the Debtors' funds to the Defendants. The Debtors also paid the Defendants $1,995 for petition preparer services. Under § 110(i),

> (1) If a bankruptcy petition preparer violates this section or commits any act that the court finds to be fraudulent, unfair, or deceptive, on the motion of the debtor, trustee, United States trustee (or the bankruptcy administrator, if any), and after notice and a hearing, the

---

[25] Ex. N.

Case 23-03065-pcm    Doc 29    Filed 03/29/24

> court shall order the bankruptcy petition preparer to pay to the debtor—
>
>> (A) the debtor's actual damages;
>>
>> (B) the greater of—
>>
>>> (i) $2,000; or
>>>
>>> (ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and
>>
>> (C) reasonable attorneys' fees and costs in moving for damages under this subsection.
>
> (2) If the trustee or creditor moves for damages on behalf of the debtor under this subsection, the bankruptcy petition preparer shall be ordered to pay the movant the additional amount of $1,000 plus reasonable attorneys' fees and costs incurred.

As detailed above, the Defendants violated § 110. Additionally, the Defendants committed acts the court finds to be fraudulent, unfair, and deceptive.

Based on their numerous exchanges, the Debtors believed Bray was an attorney. The Rezidential Group website advertised legal services, and Bray did not provide the Debtors with written notice that he was not an attorney, not authorized to practice law, and not permitted to give legal advice as required by (b)(2)(B). In fact, Bray did the opposite and gave the Debtors legal advice and bolstered this facade by saying things such as "we are not *yet* authorized to the Oregon District Court" and "[e]ven if we are not *yet* counsel of record, they are aware of our presence."[26] Bray also made outlandish, deceptive representations to the Debtors regarding what their obligations were and what they could achieve through bankruptcy, including that they

---

[26] Ex. A (emphasis added).

would only have to make plan payments for six months.[27] As stated above, the court also considers that the Defendants repeatedly and intentionally concealed their identity and involvement in the case, with Bray going so far as to impersonate a licensed attorney.

Therefore, the court orders the Defendants pay the Debtors $7,990 pursuant to § 110(i)(1)(B)(ii). The Debtors do not seek actual damages and the UST does not seek to recover attorney fees.

(c) *Section 110(h)*

Subparagraph (h)(3)(B) provides that "[a]ll fees charged by a bankruptcy petition preparer may be forfeited in any case in which the bankruptcy petition preparer fails to comply with this subsection or subsection (b), (c), (d), (e), (f), or (g)." "The court is permitted, but not required, to order the forfeiture of fees."[28] The court finds the Defendants violated subsections (b), (c), (e), (f), and (h). Given the circumstances of this case, the court orders the $3,995 in fees charged by the Defendants shall be forfeited. The funds shall be made payable to the Debtors and turned over to the UST, which the Debtors may exempt pursuant to § 110(h)(3)(C).[29]

**3. Injunctive Relief**

Section 110(j)(1) provides that a party "may bring a civil action to enjoin a bankruptcy petition preparer from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer." Under paragraph (2),

---

[27]  See In re Reynoso, 477 F.3d 1117, 1124 (9th Cir. 2007) (finding it deceptive for a BPP to represent they could show debtors how to keep bankruptcy off their credit report or retain multiple vehicles).

[28]  In re Branch, 504 B.R. 634, 648 (Bankr. E.D. Cal. 2014).

[29]  See In re Pillot, 286 B.R. 157, 163 (Bankr. C.D. Cal. 2002) (ordering defendant turn over the disgorged fees in certified funds made payable to the debtor by delivering the funds to the office of the United States Trustee).

> (A) In an action under paragraph (1), if the court finds that—
>
>> (i) a bankruptcy petition preparer has—
>>
>>> (I) engaged in conduct in violation of this section or of any provision of this title;
>>>
>>> (II) misrepresented the preparer's experience or education as a bankruptcy petition preparer; or
>>>
>>> (III) engaged in any other fraudulent, unfair, or deceptive conduct; and
>>
>> (ii) injunctive relief is appropriate to prevent the recurrence of such conduct, the court may enjoin the bankruptcy petition preparer from engaging in such conduct.
>
> (B) If the court finds that a bankruptcy petition preparer has continually engaged in conduct described in subclause (I), (II), or (III) of clause (i) and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, has not paid a penalty imposed under this section, or failed to disgorge all fees ordered by the court the court may enjoin the person from acting as a bankruptcy petition preparer.[30]

The UST seeks to enjoin the Defendants from acting as BPPs in the District of Oregon under (2)(B). The UST asserts the Defendants have continually engaged in conduct described in subclause (I), (II), and (III) and an injunction prohibiting the violating conduct would not be sufficient to prevent the Defendants from interfering with the proper administration of the Code.

In support of enjoining the Defendants from acting as BPPs, the UST notes that Bray is a disbarred attorney. The UST asserts Bray's "knowledge of the bankruptcy and legal system did not dissuade him from attempting to guide clients into bankruptcy; it apparently led him to the decision that he should do so secretly and by impersonating others, including a licensed attorney . . . ."[31] After the UST initiated this action, the Rezidential Group website was modified to

---

[30] § 110(j)(2)(B).

[31] Pl.'s Trial Brief 20, ECF No. 19.

remove some of the violating language. However, the website continues to violate § 110(e)-(f) by advertising "eviction defense" and "real property litigation services." It also encourages potential debtors to contact the Defendants for a "consultation" on whether bankruptcy is a "good solution" for them and, if so, under what chapter to file.[32] Additionally, the Defendants are connected with several known cases in other districts, including a case in which there are alleged violations of § 110.[33] Even after being confronted by the UST in connection with the Debtors' case, the Defendants were involved in filing the McMillan case in the District of Hawaii.

Affirming an injunction issued under § 110(j)(2)(B), the Court of Appeals for the Ninth Circuit considered

> that [the defendant] repeatedly and intentionally failed to disclose its identity as a bankruptcy petition preparer on the filings it prepared and failed to disclose the compensation it received for preparing the petitions as required by § 110(h). The bankruptcy court and BAP deemed these ongoing acts, as well as various representations by [the defendant] . . . deceptive.[34]

In the present case, the court finds an injunction is appropriate given that the Defendants repeatedly violated § 110 and the record reflects ongoing fraudulent, unfair, and deceitful conduct. The court finds an injunction prohibiting such conduct would not prevent the Defendants from interfering in the proper administration of the Code when considering the great length to which the Defendants went to conceal their identities, their persistence after being

---

[32] Ex. M.

[33] In re McMillan, Case No. 23-00774 (Bankr. D. Haw.); In re Stemkoski, Case No. 23-40395 (Bankr. D. Idaho); In re Arnold, Case No. 23-00110 (Bankr. D. Alaska) (executing documents on behalf of debtor in violation of § 110(e)(1)).

[34] In re Reynoso, 477 F.3d 1117, 1124 (9th Cir. 2007).

Page 13 – MEMORANDUM DECISION

confronted by the UST, and their involvement in cases across districts. Therefore, the court will issue an order enjoining Defendants from acting as BPPs in the District of Oregon. The injunction shall be as follows:

> Pursuant to 11 U.S.C. § 110(j)(2)(B), Keith H. Bray and the Rezidential Group, Inc. are prohibited from acting as bankruptcy petition preparers in the District of Oregon, including the following:
>
> 1. Preparing a document for filing by a debtor in the United States Bankruptcy Court for the District of Oregon or the United States District Court for the District of Oregon in connection with a case under title 11 of the United States Code.
>
> 2. Engaging in the unauthorized practice of law, including providing legal advice to a potential or current debtor whether over the internet, via email, or by any other means.
>
> 3. Using the term "legal" or similar terms in advertisements, including the Rezidential Group website.

If the Defendants fail to remove the violating language from the Rezidential Group website, the UST may seek supplemental relief to have the website deactivated.

## CONCLUSION

For the reasons stated above, the court will enter a judgment in favor of the UST. The UST is instructed to submit a judgment consistent with this decision. The Defendants are jointly and severally liable for (1) $22,500 in fines payable to the UST, (2) $7,990 in damages payable to the Debtors, and (3) $3,995 in forfeited fees payable to the Debtors. The Defendants are also permanently enjoined from acting as bankruptcy petition preparers in the District of Oregon.

###